# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JANITH MARTINEZ, Individually and On
Behalf of All Others Similarly Situated,

Plaintiff,

vs.

REALOGY CORPORATION, et al.,

Defendants.

3:10-cv-00755-RCJ-VPC

**ORDER**

This action involves claims of fraud and negligence brought by Janith Martinez ("Plaintiff"), individually and on behalf of a putative class of approximately 300 persons, against Realogy Corporation and Realogy Franchise Group, LLC (collectively "Realogy" or "Defendants") arising from the sale of illegitimate health insurance policies promoted by Realogy. Pending before the Court is Plaintiff's unopposed motion (the "Motion" or "Unopposed Motion") to enter a proposed order (1) granting preliminary approval of a proposed Settlement Agreement; (2) certifying the proposed Settlement Class; (3) finding that the manner and form of notice set forth in the Notice of Proposed Settlement of Class Action and Hearing on Proposed Settlement ("Notice") satisfies due process requirements and is the best notice practicable under the circumstances; (4) setting a date for the Final Approval Hearing and establishing the deadlines set forth in the Notice Order; (5) appointing BMC Group Class Action Services as claims administrator; and (6) appointing Plaintiff as class representative and Patrick R. Leverty, Esq. of the law firm Leverty & Associates Law Chtd. as class counsel. (Mot., ECF No. 119). On Tuesday, October 15, 2013, the Court held a hearing on the Motion (the "Preliminary Approval Hearing"), and for the reasons given herein, the Motion is denied.

## I.    FACTS AND PROCEDURAL HISTORY

The relevant background information includes (1) a brief description of the litigation leading to the settlement; (2) a description of the settlement discussions; (3) a description of

the settlement itself; (4) a description of the proposed notice program; and (5) the proposed definition of the class.

**A. Description of the Litigation**

On December 3, 2010, Plaintiff commenced this action by filing the initial complaint against Realogy. (Compl., ECF No. 1). The Court dismissed this complaint for lack of subject matter jurisdiction, granting leave to amend on May 16, 2011. (Tr. 16, ECF No. 20). On May 31, 2011, Plaintiff filed her First Amended Complaint against Realogy. (First Am. Compl., ECF No. 21), and on October 27, 2011, the Court again dismissed the complaint for lack of subject matter jurisdiction  (Order, ECF No. 35, at 4–6). On November 11, 2011, Plaintiff filed her Second Amended Complaint. (Second Am. Compl., ECF No. 36), alleging eight causes of action, including (1) negligence; (2) breach of fiduciary duty/constructive fraud; (3) negligent misrepresentation; (4) intentional misrepresentation/ fraud; (5) fraud by concealment/omission; (6) unjust enrichment; (7) assisting in the procurement of unauthorized insurance contracts; and (8) Rico violations. (*Id.* at 23–37).

On November 30, 2011, Realogy filed a Motion to Dismiss the Second Amended Complaint and a Motion to Strike Plaintiff's Class Claims, arguing that all of Plaintiff's individual and class claims should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. (Mot. to Dismiss, ECF No. 40). On May 14, 2012, the Court issued an order granting in part and denying in part Realogy's motion, finding that Plaintiff  had adequately established subject matter jurisdiction, and denying Realogy's motion as to Plaintiff's RICO, unauthorized insurance, negligence, negligent misrepresentation, intentional misrepresentation, fraud by concealment/omission, unjust enrichment, and class action claims. (Order, ECF No. 60).

On May 16, 2012 Plaintiff filed a Third Amended Complaint (the "TAC"). (Third Am. Compl., ECF No. 61). The TAC alleges that in July 2007, Defendants sponsored major medical and limited benefit medical health insurance programs administered by AFID, LLC and that Defendants marketed this insurance program to its 250,000 Realogy brand affiliated brokers, sales associates, employees, and their families. (*Id.*). The TAC further alleges that

Defendants affirmatively misrepresented that these insurance programs were available and legal in all 50 states, and in doing so, omitted the fact that the AFID, LLC program was not legally available in most, if not all, states. (*Id.*).

### B. Settlement Discussions

Plaintiff's unopposed  motion alleges that the settling parties participated in a series of formal and informal arm's-length settlement discussion and negotiations, including a mediation before the Honorable Jerry Car Whitehead (Ret.), on November 27, 2012. (Mot., ECF No. 119, at 4–5 ). The Parties reached a tentative resolution during the formal mediation with Judge Whitehead, but continued to negotiate for a final resolution over the next two and half months. (*Id.*). Plaintiff further alleges that all negotiations were well informed by, among other things, months of extensive informal investigation by Plaintiff's counsel, analysis of the merits of Plaintiff's claims through over 18,500 pages of written discovery, and contentious motion practice. (*Id.*).

### C. The Proposed Settlement

The total settlement amount is $1,080,000. The parties propose allocating the settlement in the following manner: First, for the award of class counsel fees, in the amount of $360,000, and counsel expenses, in an amount not to exceed $5,500, and to the extent expenses are less than $5,500, the remainder returns to Defendants; Second, a payment to the Plaintiff in the amount of $5,000 in recognition of her service as class representative; Third, an allocation of $150,000 for claims administration; and Fourth, the remaining $559,500 to the approximately 300 class members as follows: Class members submitting proper claims will be paid 40% of the premiums they paid, unless 40% of the total aggregated claims of the class members exceeds $559,500, in which case the class members shall be paid on a pro rata basis. Any funds remaining in the settlement account attributable to class members that are deemed unavailable and unreachable, or who do not claim their payment within six months of the settlement becoming final, shall be paid to Defendants. (*Id.*).

**D.  The Proposed Notice Program**

The proposed Settlement provides for notice by direct mail to all class members who can be located from Defendants' records or through reasonable efforts from the national Change of Address system administered by the United States Postal Service. (*Id.* at 9–11). The parties also propose a one-time notice to be provided through an advertisement placed in the USA Today newspaper. In addition, the proposed Settlement requires the Claims Administrator and Class Counsel to post the Notice on their respective websites. (*Id.*).

**E.  The Proposed Definition of the Class**

The proposed class is defined as "all persons who are or were Realogy brand affiliated brokers, sales associates or employees, and their family members as applicable, who, between July 2007 and July 2010, purchased and/or paid premiums for a health insurance program sold by AFID, LLC and/or 'Association of Franchise and Independent Distributors, LLC,' that was marketed by a Realogy brand during that time period." (ECF No. 119-2).

**II.    LEGAL STANDARDS & ANALYSIS**

The Unopposed Motion contends, among other things, that the Court should (1) grant preliminary approval of the proposed Settlement Agreement; (2) certify the proposed Settlement Class; and (3) approve the proposed Notice Program. The Court disagrees, finding that each of these proposals falls short of the applicable legal standards.

**A.  Preliminary Approval of the Proposed Settlement Agreement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). In assessing whether the proposed settlement protects the interests of absent class members, the Court must carefully consider "whether [the] proposed settlement is fundamentally fair, adequate, and reasonable, recognizing that [i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . " *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026–27 (9th Cir. 1998)) (internal quotation marks omitted). This requires the Court to balance a number of factors, including (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) (internal quotation marks omitted)).

When, as here, the parties have entered into a settlement agreement before the district court certifies the class, the Court "must pay '*undiluted, even heightened, attention*' to class certification requirements . . ." *Hanlon*, 150 F.3d at 1019 (emphasis added) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The dangers of collusion between class counsel and the defendant, as well as the need for additional procedural protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). *Id.* Moreover, concerns about the fairness of settlement agreements "warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Staton*, 327 F.3d 938, 1021.

Plaintiff alleges that the that the Settlement Agreement was reached only after Plaintiff and her counsel developed a thorough understanding of the facts and merits of the case through extensive and thorough document discovery, briefing oppositions to the aforementioned motions to dismiss, and frank discussions with opposing counsel during a mediation with Judge Jerry Carr Whitehead. (Mot., ECF No. 119, at 7). Plaintiff further contends that the fairness and adequacy of the total settlement amount is underscored by the foreseeable challenges that the Settlement Class would face in its efforts to succeed on the merits; the foreseeable expense and duration of litigation, including potential appeals; and the resulting delay in recovery. (*Id.*).

Plaintiff,  however, has failed to apply these facts to the relevant *Torrisi* factors, or any other iteration of them, and she has failed to analyze the proposed settlement in light of the controlling, and more demanding, standard for reviewing precertification settlement proposals,

1   *See Hanlon*, 150 F.3d at 1019. Instead, she cites several unreported district court cases for the

2   proposition that the Court should grant preliminary approval for a proposed settlement as long

3   as it appears to be the product of serious, informed, noncollusive negotiations, has no obvious

4   deficiencies, does not improperly grant preferential treatment to class representatives or

5   segments of the class, and falls within the range of possible approval. (*See* Mot. ECF No. 119,

6   at 6 (citing *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N. D.

7   Cal. Oct 25, 2006))). While this standard may, in some circumstances, fully address the

8   fairness standards established by the Ninth Circuit, it fails to account for at least two of the

9   *Torrisi* factors relevant in this case. These are (1) total amount offered in settlement *vis-à-vis*

10  the value of the claims at issue and (2) the foreseeable reaction of class members to the amount

11  offered in settlement. *Torrisi*, 8 F.3d at 1375 (9th Cir.1993)

12        Additionally, the Parties have failed to acknowledge that the Court must examine the

13  settlement agreement taken as a whole, and not just the fairness or adequacy of the total

14  amount offered. The unopposed motion addresses only the fairness of the offered $1,080,000;

15  it includes no argument concerning the fairness or reasonableness of the proposed allocation of

16  those funds. Thus, even assuming that total amount of $1,080,000 is a fundamentally fair,

17  adequate, and reasonable result, the Court has no basis for concluding that the proposed

18  allocation is fundamentally fair. Furthermore, an examination of the proposed allocation

19  provisions reveals serious concerns with respect to holistic fairness.

20            **i.    Proposed Class Members' Share of the Settlement**

21        As an initial matter, the size of the proposed class is unclear. While the Unopposed

22  Motion approximates the class at 300 members, (Mot., ECF No. 119, at 12), Plaintiff conceded

23  at the Preliminary Approval Hearing that there may be as many as 1000 members. Under the

24  proposed Settlement Agreement, the amount to be paid to the entire class will not exceed

25  $559,500, with each class member receiving 40% of premiums paid by the class member,

26  unless 40% of the total aggregated claims of the class members exceeds $559,500, in which

27  case the class members will be paid on a pro rata basis. (*Id.*) In other words, under the

28  proposed Settlement, the class, will receive, at most, 51.8% of the total settlement amount.

1    The proposed 40% figure has an obvious relation to the amount that each class member

2    paid for the illusory insurance, but it is unclear that it represents a fair  recovery for class

3    members. First, because the size of the class is presently unknown, it is far from certain that

4    the class members will actually recover the full 40% of premiums paid. Second, even if all

5    class members receive the full 40%, it is unclear that this figure represents a fair result,

6    particularly in relation to the large sums the Parties propose allocating for attorney's fees and

7    administrative costs. (Mot., ECF No. 119, at 5 (allocating 33.3% of the total settlement amount

8    to Class Counsel for costs and fees and 13.8% for claims administration)).

9    Third, the proposed recovery bears no relation to the injury suffered by the subset of

10   class members who were actually denied coverage for medical services under an AFID policy.

11   (*See* Third Am. Compl., ECF No. 61, at 5 (alleging that " Realogy brand affiliated brokers and

12   sales associates, and their family members, necessitated medical treatment and care that went

13   unpaid because the Realogy sponsored health programs were not legitimate insurance

14   programs.")). Likewise, it bears no relation to the monetary damages that class members have

15   likely suffered due to a loss of creditable health insurance coverage. (*See id.* at 2 (alleging

16   "damages due to the loss of creditable coverage, increased premiums, and the resulting

17   preexisting conditions exclusions and waiting periods that will result due to not having valid

18   insurance for a period of almost three (3) years")).

19   During the Preliminary Approval Hearing, Counsel for Plaintiff implied that because

20   the proposed class is not defined to include these injuries, the proposed settlement will not

21   preclude those who suffered them from bringing individual claims. However, the Settlement

22   Agreement contains a provision purporting to release Realogy from all claims that *could* have

23   been brought by the Plaintiff on her own and on behalf of the class "in connection with, arising

24   out of, or in any way related to any acts . . . alleged or otherwise referred to in or embraced by

25   the Action or the Complaint." (ECF No. 119-1, at 8). This provision appears to release

26   Realogy from liability for future claims, including individual claims for denial of coverage and

27   loss of creditable coverage, as long as Plaintiff *could* have asserted them. At the present time,

28

it is not clear to the Court that Plaintiff could not have asserted them.[1] Accordingly, the Court cannot conclude that the proposed Settlement will not preclude parties suffering the aforementioned injuries from bringing individual claims. Furthermore, even if the Settlement Agreement does not preclude individual claims, individual claimants could be prejudiced by having relied on this action, which until now sought class-wide recovery for these claims, to resolve their injuries, while the statute of limitations on the individual claims continued to run.

For these reasons, the Court finds that the Parties have failed to demonstrate that the proposed recovery for the class is fundamentally fair. The Parties are advised to either redefine the class to include these additional injuries or demonstrate to the Court that fairness is achieved notwithstanding their exclusion.

### ii.     Proposed Award of Attorney's Fees

Plaintiff's Counsel proposes an award of attorneys' fees in the amount of $360,000 (or 33.3% of the total settlement) and costs in an amount not to exceed $5,500.00. While the Court need not directly consider an award of attorneys' fees until the settlement is final, it must briefly address them now, because any award of fees will reduce the amount payable to the class, and thus bears on the Court's present fairness analysis.

This is a common fund case. Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (in a common fund case, "a court has control over the fund—even one created pursuant to a settlement, as here . . . and assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)). In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. *Staton*, 327 F.3d 938 at 970. As the Ninth Circuit has explained,

---

[1] In any event, this raises concerns under the "adequacy of representation" prong of the Rule 23 certification analysis, which is discussed below.

> [b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. *Rubber-stamp approval, even in the absence of objections, is improper.*

*Id.* (emphasis added) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002)) (internal quotation marks omitted); *see also In re Coordinated Pre-trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

An award of attorneys' fees for creating a common fund may be calculated in one of two ways: (1) a percentage of the funds created; or (2) "the lodestar method, which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. The Ninth Circuit has approved either method for determining a reasonable award of fees. *Id.* However, the fee award must always be reasonable under the circumstances. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33% of the total settlement value, with 25% considered a benchmark percentage. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). In circumstances where a percentage recovery would be too small or too large in light of the hours worked or other relevant factors, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi*, 8 F.3d at 1376 (citations omitted).

Here, Counsel has not yet provided a basis for concluding that the proposed fee award is reasonable. However, the Court assumes from the requested award of exactly 33.3% that Counsel will rely on the percentage-of-the-fund approach to support his calculation of fees. If this is the case, Counsel must make a strong showing under the *Vizcaino* factors, because an award of 33.3% is at the highest end of the acceptable range, and a full 8.3% higher than the Ninth Circuit's "bench mark." Such a showing is likely to prove difficult, particularly in light of the results achieved for class members. Alternatively, Counsel could rely on the lodestar method as a basis for the proposed fee. Again, though, it seems unlikely that the Settlement Agreement could support the multiplier necessary to yield a fee of $360,000.

Assuming, that Counsel is unable to persuade the Court to grant the full award, the difference will presumably will fall to the class members' share. However, Plaintiff's Moving Papers are not clear on this point. Moreover, even assuming that the Class as a whole is entitled to the difference between the fee award requested and the fee award actually granted, it is unclear how this will affect individual members' shares. Thus, in order to persuade the Court that the Settlement Agreement, taken as a whole, is fundamental fair to class members, the Parties must clarify this issue.

### iii.    Proposed Allocation of Administrative Fees

The Settlement Agreement proposes the allocation of $150,000 (or 13.8% of the total settlement) for claims administration. This figure appears unreasonable high. Considering that Plaintiff has estimated a class of 300 members, an allocation of $150,000 for administrative fees reflects an assumption that it will cost approximately $500 to process each class member's claim. However, nothing in the pleadings indicates that claims processing should be so expensive, and several case examples suggest that an amount well under $100,000 would likely be sufficient. *See, e.g.*, *Garcia v. Gordon Trucking*, No. 1:10-CV-0324-AWI–SKO, 2012 WL 5364575, at *3 (E.D.Cal. Oct.31, 2012) (approving $25,000 administrator fee awarded in a wage and hour case involving 1,868 potential class members); *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb.6, 2012) (awarding $250,000 in administration costs where claims administrator sent out 68,487

1   notices); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 483 (E.D. Cal.

2   2010)(approving $25,000 administrator fee awarded in wage and hour case involving 177

3   potential class members).

4       **B.  Certification of the Proposed Settlement Class**

5           In order for a class action to be certified, plaintiffs must establish the four prerequisites

6   of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Fed. R. Civ. P.

7   23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). While the current

8   version of the Settlement Agreement appears to satisfy most of Rule 23's class-certification

9   requirements, the Court has concerns under Rule 23(a)'s "adequacy of representation" prong.

10          Under Rule 23(a)(4), parties seeking class certification must show that "the

11  representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ.

12  P. 23(a)(4). The satisfaction of constitutional due process concerns requires that absent class

13  members be afforded adequate representation prior to an entry of judgment, which binds them.

14  *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512

15  (9th Cir. 1978). Determining the adequacy of representation requires consideration of two

16  questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with

17  other class members and (2) will the named plaintiffs and their counsel prosecute the action

18  vigorously on behalf of the class?" *Id.*

19          As explained above, it is not immediately clear that Plaintiff's interests are entirely

20  parallel to those of other class members. This is because the proposed Settlement Agreement,

21  specifically in its liability release provision, is unclear with respect to whether the Court's

22  approval would preclude those claiming other injuries, such as unpaid medical benefits or

23  damages resulting from a loss of creditable coverage, from bringing individual claims at a later

24  date. (*See* ECF No. 119-1, at 8). Under the release provision, if the Plaintiff could have alleged

25  these claims, then it appears that other class members will be precluded from bringing them on

26  an individual basis, and thus, that this case involves a subclass with inadequately represented

27  interests. On the other hand, if Plaintiff could not have alleged these claims in the present

28  action, then it is unclear that she can "prosecute the action vigorously on behalf of the class."

*Hanlon*, 150 F.3d at 1020. Here, the Court requires additional briefing, specifically with respect to whether this case involves subclasses with diverging interests and whether and how the proposed Settlement Agreement adequately protects those interests. Unless the Court is wholly satisfied on this point, the class will not be certified.

### C.  The Proposed Notice Program

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Additionally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Due Process Clause, moreover, gives unnamed class members the right to notice of the settlement of a class action. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). To comport with the requirements of due process, notice must be "*reasonably calculated to reach interested parties.*" *Mullane*, 339 U.S. at 318–20 (emphasis added).

The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id.*

Finally, Pursuant to 28 U.S.C. § 1715(b), "not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement."[2]

---

[2] While the notification provisions do not specify a further role for the officials, courts are not permitted to give final approval to a proposed settlement until 90 days after all officials have been notified, 28 U.S.C. § 1715(b), and a class member may choose not to be bound by a settlement agreement or consent decree if the class member demonstrates that the required notifications were not provided, § 1715(e).

1    The substance of the present version of the proposed Notice appears to comply with

2    Rule 23's requirements. However, the proposed procedure for delivery is defective for at least

3    two reasons: First, the proposed Settlement makes no mention of the notice requirements

4    outlined in 28 U.S.C. § 1715(b), and thus the Court cannot conclude that the Parties are

5    prepared to comply with them. Second, the proposed method for mailing notice is not

6    sufficiently specific.

7    Plaintiff initially alleged that the AFID insurance was marketed, by Reaolgy to over

8    250,000 individuals (Third Am. Compl., ECF No. 61), and now alleges that there are

9    approximately 300 class members, (Mot., ECF No. 119, at 12), while conceding that there may

10   be as many as 1000. It is unclear from the proposed Notice Program, which simply provides

11   for notice "to all class members who can be located from Defendants' records," (*Id.* at 9), how

12   many of these potentially interested parties will receive mailed notice. This deficiency was

13   underscored at the Preliminary Approval Hearing, during which Counsel for Plaintiff

14   conceded that it could not identify the individuals who purchased the illusory insurance. Put

15   simply, Plaintiff does not yet know who is entitled to notice, let alone their names or

16   addresses. Therefore, the Court cannot conclude, at this point, that Plaintiff's proposed method

17   for delivering notice is "reasonably calculated to reach interested parties." *Mullane*, 339 U.S.

18   at 318–20. Accordingly, the Court finds that the proposed Notice Program fails to comport

19   with the requirements of Due Process.

## CONCLUSION

21   IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Approval of the

22   Proposed Settlement and Certification of the Class (ECF No. 119) is DENIED.

24   IT IS SO ORDERED.

25   Dated:  This 29th day of October, 2013.

27                    _____
                      ROBERT C. JONES
28                    United States District Judge

-13-